# STATE OF MICHIGAN

# COURT OF APPEALS

GORDON JOSEPH BREDOW and SUZANNE
BREDOW,

    Plaintiff-Appellant,

v

LAND & CO., PRD CONSTRUCTION INC d/b/a
LAND SERVICE AND SUPPLY, WYOMING
INDUSTRIAL CENTER LLC, AND WYOMING
INDUSTRIAL CENTER II LLC,

    Defendants-Appellees.

FOR PUBLICATION
October 30, 2014

No. 315219
Kent Circuit Court
LC No. 11-011291-NO

Before: RONAYNE KRAUSE, P.J., and HOEKSTRA and WHITBECK, JJ.

WHITBECK, J. (*concurring*).

  I concur with the lead opinion. I write separately solely to address our dissenting colleague's analysis of the open and obvious doctrine.

  I first note that we all apparently agree that the accumulation of snow and ice on the roof was open and obvious[1] and that any hazard that this accumulation created was effectively avoidable because there was another usable exit.[2] Setting aside the question of plaintiff's status as an invitee, our dissenting colleague would reverse on the unreasonably dangerous prong of the premises liability paradigm. Briefly summarized, that paradigm is that there is no liability if the hazard is open and obvious, with the two exceptions that liability may still attach if the hazard

---

[1] See our dissenting colleague's statement that "[t]he question is a close one, but I believe the trial court correctly found that *in this particular case*, the danger was open and obvious." (Emphasis in the original).

[2] See our dissenting colleague's statement that "[h]owever, the evidence that employees could have used an alternative door to the building; doing so would merely have been inconvenient and was contrary to their established and expected practice. *Consequently, the danger could not have been effectively unavoidable.*" (Emphasis supplied).

was unreasonably dangerous *or* if the hazard was effectively unavoidable.[3]  Thus, if we were to consider the snow and ice accumulation on the roof as a latent defect about which defendant should have warned plaintiff, we must then deal with the unreasonably dangerous exception to the open and obvious doctrine.

In *Lugo v Ameritech Corp, Inc*, the Michigan Supreme Court gave the example of a 30-foot-deep unguarded pit to illustrate when a condition might be unreasonably dangerous:

> [W]ith regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.
>
> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water.  While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water.  In other words, the open and obvious condition is effectively unavoidable.  Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm.  To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot.  The condition might well be open and obvious, and one would likely be capable of avoiding the danger.  Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken.  In sum, only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.[4]

Central to the analysis of both our dissenting colleague and the Supreme Court is the proverbial 30–foot-deep unguarded pit.  According to Supreme Court's formulation, such a pit would be unreasonably dangerous.  But to whom?  I suggest that the Supreme Court had in mind the severe nature of the danger to an innocent invitee on the land who might fall by misadventure into the pit.

However, the Supreme Court's hypothetical 30-foot-deep pit is not even remotely similar to the situation we have here.  It was certainly conceivable that ice or snow might fall off the

---

[3] See, generally, *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384.

[4] *Id*. at 517-519 (footnotes omitted).

building; indeed plaintiff testified that sometimes chunks a foot in diameter would fall off the building. But the only complaints were that they were loud when they fell. What would not be typically expected is that a whole 12- to 14-foot section of snow, ice, and debris will fall off a roof without reason.

It follows, then, that the dangerous condition of the land must cause a plaintiff's injury. Plaintiff here was certainly not an innocent plaintiff who was simply injured by misadventure. As the lead opinion points out, by his unsolicited actions, plaintiff caused the danger and therefore caused his own injury. How, then, can we say it was the accumulation of ice and snow on the roof that was, without more, unreasonably dangerous? And how, then, can we say it was the dangerous condition—presuming that it was dangerous—that caused plaintiff's injury when plaintiff's own actions directly led to that injury?

By analogy, consider a person—let's call him the Gratuitous Volunteer—who sees and climbs down into a 30–foot-deep earthen pit and then proceeds, entirely on his own, to shovel away at one of the earthen walls to make a ramp back up. But, not surprisingly, the shoveling weakens the wall and it collapses, injuring the Gratuitous Volunteer. Clearly, before the Gratuitous Volunteer began shoveling, the wall was stable and safe and the pit was not unreasonably dangerous to him or to anyone else similarly situated. It was purely and simply the Gratuitous Volunteer's own actions that caused the pit to become dangerous at all, much less unreasonably dangerous. The Gratuitous Volunteer's actions, not the condition of the land, caused his injury. The same is true of plaintiff here.

I also note our dissenting colleague's statement that she "would also decline to address the defendant's alternative argument that plaintiff's injury was his own fault: defendants appear to have raised this for the first time on appeal, and I would leave it up to the parties to address on remand." The record belies this assertion.

At the hearing below, the trial court discussed the causation issue and declared that "plaintiff progressed to using his shovel to knock away snow and ice hanging from the roof. This in turn caused a large portion of snow and ice to come crashing down onto the plaintiff and knocking him to the ground." Defendant raised this issue in its brief on appeal as an alternative ground for affirmance. Plaintiff's counsel at oral argument conceded that this issue was raised below. Whether counsel's concession following my direct question on this point was wise is irrelevant; it remains a concession. The issue was raised before and discussed by the trial court and raised by defendant on appeal. If we are to consider our dissenting colleague's unreasonably dangerous analysis at all, we must consider it in light of this issue.

/s/ William C. Whitbeck